**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | NOT FOR PUBLICATION |
| BSG Corp. f/k/a Bio-Signal Group Corp., | Chapter 11 (Subchapter V) |
| Debtor. | Case No. 25-12755 (JPM) |

**MEMORANDUM OPINION AND ORDER GRANTING THE DEBTOR'S
MOTION FOR AUTHORIZATION TO OBTAIN POST-PETITION
FINANCING AND OVERRULING THE OBJECTIONS OF CREDITORS
NEW ENTERPRISES LTD. AND SUBRAMANIAN SUBBIAH**

**JOHN P. MASTANDO III**
**UNITED STATES BANKRUPTCY JUDGE**

## I.     INTRODUCTION

This matter arises from the Chapter 11 case of BSG Corp. f/k/a Bio-Signal Group Corp. (the "**Debtor**").  Before the Court is the Debtor's *Motion for Authorization to Obtain Post-Petition Financing*, dated March 10, 2026 (the "**DIP Motion**").  (Dkt. No. 65).  On March 29, 2026, unsecured creditors New Enterprises Ltd. ("**New Enterprises**") and Subramaniam Subbiah ("**Subbiah**" and together with New Enterprises, the "**Creditors**") filed an objection to the DIP Motion (the "**Objection**").  (Dkt. No. 68).  For the reasons set forth below, the DIP Motion is **GRANTED**, and the Objection is **OVERRULED**.

## II.     BACKGROUND

The Debtor is a Delaware corporation engaged in the development and sale of FDA-cleared medical devices used in brain imaging, with its principal place of business in New York.  (*See* Declaration of Andre Fenton, Dkt. No. 2).  On December 8, 2025, the Debtor filed a voluntary petition for relief under Chapter 11, Subchapter V, in this District.  (Dkt. No. 1).

According to the Debtor's schedules, the Debtor has total assets of $1,135,679.65 and total liabilities of $2,677,645.56. (*See* Official Form 206, Dkt. No. 32). New Enterprises, a privately-held family investment trust based in Singapore, asserts an unsecured claim in the amount of $151,011.38. (*See* Proof of Claim No. 6-1). Subbiah, a former member of the Debtor's board of directors, asserts an unsecured claim in the amount of $4,813,046.37. (*See* Proof of Claim No. 11-1). The Debtor's amended schedules, however, list New Enterprises as holding a disputed claim of up to $205,000.00 and do not list Subbiah as a creditor. (*See* Amended Schedule E/F, Dkt. No. 48).

On December 19, 2025, the Debtor commenced an adversary proceeding against the Creditors. *See BSG Corp. v. New Enterprises Ltd. et al.*, No. 25-01159 (Bankr. S.D.N.Y. filed Dec. 19, 2025) (the "**Adversary Proceeding**"). In that proceeding, the Debtor alleges that New Enterprises engaged in a series of improper actions, including what the Debtor characterizes as a "sham UCC sale" of the Debtor's assets in January 2023. (Adv. Proc. Dkt. No. 1, ¶ 32). The Debtor asserts that, in anticipation of the Debtor's financial distress, New Enterprises filed a financing statement with the Delaware Department of State purporting to perfect a security interest in "all of [the Debtor's] assets," despite the absence of an executed security agreement. (*Id*. ¶¶ 32-44). New Enterprises also allegedly recorded an assignment of the Debtor's patents with the United States Patent and Trademark Office, purporting to record a security interest in all of the Debtor's then-valid patents. (*Id*. ¶ 45).

According to the Debtor, following an alleged event of default, New Enterprises conducted a private sale of the Debtor's assets and purchased those assets in exchange for a $1,000,000.00 reduction of debt purportedly owed to New Enterprises. (*Id*. ¶¶ 41-43). The Debtor alleges that no authorized representatives of the Debtor—other than Subbiah, who was then serving as interim

CEO—participated in or approved the transaction. (*Id*.). Based on these allegations, the Debtor contends in the Adversary Proceeding that Subbiah colluded with New Enterprises in orchestrating the "sham UCC sale," in breach of his fiduciary duties. (*Id*. ¶ 47). The Debtor asserts, among other claims, that these transactions constitute avoidable fraudulent transfers under 11 U.S.C. § 544(b), and seeks, inter alia, disgorgement of the transferred assets.

On March 10, 2026, the Debtor filed the DIP Motion, seeking the Court's approval to obtain post-petition financing of up to $100,000.00 ("**DIP Loan**") from several of the Debtor's directors—specifically, the Debtor's president and chairman Andre Fenton, and board members John Gridley and Kuljinder Chase. (Dkt. No. 65). Under the proposed DIP agreement, the DIP loan would be afforded administrative expense priority pursuant to 11 U.S.C. §§ 503(b) and 507(a)(2), and secured by all post-petition assets acquired by the Debtor under § 364(c). (*Id*. Exhibit B).

The DIP Motion noticed a hearing scheduled for March 30, 2026, and established March 26, 2026 as the deadline to file objections. (*Id*.). A certificate of service reflecting proper service on all parties in interest was filed with the Court. (*Id*.). On March 28, 2026, after no timely objections were filed, a Certificate of No Objection was docketed pursuant to Local Rule 9013-3 (the "**CNO**"). (Dkt. No. 67). In light of the absence of any timely objection, the Court cancelled the scheduled hearing.

On Sunday, March 29, 2026—two days after the objection deadline and one day before the originally-scheduled hearing—the Creditors filed the Objection. (Dkt. No. 68). The Creditors contend that the DIP Motion should be denied because the proposed financing "is unnecessary" and allegedly benefits "only the insiders," given that the DIP lenders are the Debtor's president and two board members. (*Id*.). The Creditors further argue that the DIP Motion is improper

because the Debtor has previously filed a civil action in the U.S. District Court for the Southern District of New York (the "**District Court**") asserting claims they characterize as "identical" to those raised in the Adversary Proceeding, and that the District Court denied the Debtor's request for preliminary injunction in that action. (*Id*.). According to the Creditors, the Debtor is now attempting, through the DIP Motion, to obtain relief that was denied by the District Court. (*Id*.).

On April 1, 2026, the Debtor filed a reply (the "**Reply**"). (Dkt. No. 69). The Debtor asserts that the Objection is untimely given the proper notice of the DIP Motion, and that the Creditors have offered no "reasonable justification for [their] delay." (*Id*.). The Debtor further contends that, even if considered on the merits, the Objection lacks any legal or factual basis. According to the Debtor, the "directors' willingness to provide up to $100,000 in additional funding for ongoing operations" is modest relative to the Debtor's total liabilities and does not prejudice the Creditors' rights in any way. (*Id*.). Further, the Debtor asserts that the Creditors' reference to the preliminary injunction in a separate civil action pending before the District Court is irrelevant to this Motion, because the relief sought in the District Court is distinct from the Adversary Proceeding and does not impact the administration of this Chapter 11 case. (*Id*.).

## III.    LEGAL ANALYSIS

### A.    TIMELINESS OF OBJECTIONS UNDER LOCAL RULES

Bankruptcy courts have the authority to adopt "local rules of practice and procedure." *In re Paula Saker & Co., Inc*., 37 B.R. 802, 809 (Bankr. S.D.N.Y. 1984); *see also Sears, Roebuck & Co. v. Spivey*, 265 B.R. 357, 372 (E.D.N.Y. 2001) (citing *Somlyo v. J. Lu–Rob Enters., Inc*., 932 F.2d 1043, 1046 (2d Cir. 1991)) (noting that "[b]ankruptcy courts have the power to enact local rules governing the practice, procedure, and conduct" of cases before them). These local rules "have the force of law to the extent they do not conflict with higher authority." *Sears*, 265 B.R. at

357; *see also Puerner v. Hudson Spine & Pain Med., P.C.*, No. 17-CV-03590 (ALC), 2019 WL 2548134, at \*3 (S.D.N.Y. June 19, 2019) (recognizing that "local rules [carry] the force of law").

Local Rule 9006-1 authorizes this Court to reject untimely filed papers. *See* S.D.N.Y. Local Bankr. R. 9006-1. Although bankruptcy courts retain discretion to consider late filings, courts routinely decline to consider untimely objections absent a showing of unusual circumstances or good cause. *See, e.g.*, *In re 12 Byfield, LLC*, No. 10-22740 (RDD), 2011 WL 3739406, at \*1 (Bankr. S.D.N.Y. May 12, 2011) (noting that "[l]ate objections may not be considered by the Court"); *In re Maidan*, No. 8-19-77027-LAS, 2024 WL 386826, at \*1 (Bankr. E.D.N.Y. Feb. 1, 2024) (noting that the "Court has discretion to consider untimely filings"); *Concord Boat Corp. v. Brunswick Corp.*, 169 F.R.D. 44, 48 (S.D.N.Y. 1996) (noting that a court may consider untimely filings upon a showing of "unusual circumstances" and "good cause").

Here, the Court agrees with the Debtor that the Objection is untimely. The record reflects that the Debtor properly noticed the DIP Motion and served it upon all parties in interest. (Dkt. No. 65). The notice set a hearing for March 30, 2026, at 9:30 a.m., and required that any objections be filed and served by March 26, 2026, at 4:00 p.m. (*Id*.). The parties were afforded at least fourteen days' notice in accordance with Local Rule 9006-1 and Federal Rule of Bankruptcy Procedure 9006. *See* Fed. R. Bankr. P. 9006; *see also* S.D.N.Y. Local Bankr. R. 9006-1(b). After the objection deadline expired without any filing by the Creditors, the Debtor properly filed the CNO pursuant to Local Rule 9013-3. (Dkt. No. 67).

Despite adequate notice and the clear objection deadline, the Creditors did not file a response until Sunday, March 29, 2026—two days after the deadline and on the eve of the scheduled hearing. (Dkt. No. 68). The Objection was filed after the CNO had been entered and after the hearing had been cancelled. The Creditors have offered no explanation—let alone a

5

showing of "unusual circumstance or good cause"—for their delay. Under these circumstances, the Court finds that the Objection was untimely and that there is no basis to excuse the late filing. The Objection is therefore overruled.

### B. APPROVAL OF POST-PETITION FINANCING UNDER §§ 364(B)-(C)

Even if the Court considers the merits of the Objection despite the late filing, the Court agrees with the Debtor that the Objection should be overruled.

Section 364(b) authorizes the trustee or debtor-in-possession, "after notice and a hearing," to obtain unsecured credit or incur unsecured debt outside the ordinary course of business. 11 U.S.C. § 364(b); *see also In re Sobiech*, 125 B.R. 110, 115 (Bankr. S.D.N.Y. 1991), *aff'd*, *Mulligan v. Sobiech*, 131 B.R. 917 (S.D.N.Y. 1991). A court may allow such credit as an administrative expense under § 503(b)(1), which grants priority to the "actual, necessary costs and expenses of preserving the estate." *In re Klein Sleep Prods., Inc.*, 78 F.3d 18, 22 (2d Cir. 1996) (citing 11 U.S.C. § 503(b)(1)(A)).

If unsecured credit allowable under § 503(b)(1) as an administrative expense cannot be obtained, § 364(c) permits the trustee or debtor-in-possession to obtain credit or incur debt: (i) with superpriority administrative expense status under § 364(c)(1); (ii) "secured by a lien on property of the estate that is not otherwise subject to a lien" under § 364(c)(2); or (iii) "secured by a junior lien on property of the estate that is subject to a lien" under § 364(c)(3). *In re YL W. 87th Holdings I LLC*, 423 B.R. 421, 441 (Bankr. S.D.N.Y. 2010) (citing 11 U.S.C. § 364(c)); *see also In re Photo Promotion Assocs., Inc.*, 881 F.2d 6, 8 (2d Cir. 1989) (explaining that § 364(c) authorizes a trustee or debtor-in-possession to obtain superpriority or secured credit upon a showing that unsecured administrative-expense financing is unavailable under § 364(b)).

6

"[I]n evaluating the merits of a proposed post-petition financing, courts will defer to a debtor's business judgment provided that the financing does not unduly benefit a party in interest at the expense of the estate." *In re SPAC Recovery Co*., 676 B.R. 260, 269 (Bankr. S.D.N.Y. 2026) (citing *In re Latam Airlines Group S.A*., 620 B.R. 722, 768 (Bankr. S.D.N.Y. 2020)). The business judgment rule "is a presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company." *SPAC Recovery*, 676 B.R. at 269 (citing *In re Integrated Resources, Inc*., 147 B.R. 650, 656 (S.D.N.Y. 1992)).

Where the proposed financing involves insiders, however, courts do not simply defer to the debtor's business judgment. *See In re Wythe Berry Fee Owner LLC*, No. 22-11340 (MG), 2024 WL 2767121, at *17 (Bankr. S.D.N.Y. May 29, 2024) (holding that "business judgment" deference is "not applicable to transactions [between] a debtor and an insider of the debtor"). Instead, "courts apply a 'heightened scrutiny' test in assessing the bona fides of a transaction [between] a debtor and an insider of the debtor." *In re LATAM Airlines Group S.A*., No. 20-11254 (JLG), 2022 WL 272167, at *14 (Bankr. S.D.N.Y. Jan. 28, 2022). Under that standard, courts evaluate "the integrity and entire fairness of the transaction at issue, typically examining whether the process and price of a proposed transaction not only appear fair but are fair and whether fiduciary duties were properly taken into consideration." *In re Innkeepers USA Trust*, 442 B.R. 227, 231 (Bankr. S.D.N.Y. 2010) (emphasis added).

Here, although the proposed DIP lenders are insiders—namely, the Debtor's president and two board members—the Court finds that the transaction satisfies the entire fairness standard.

The record reflects that the process was transparent and procedurally sound. In assessing procedural fairness, courts examine "when the transaction was timed, how it was initiated,

7

structured, negotiated, disclosed to the directors, and how the approvals of the directors … were obtained." *SPAC Recovery*, 676 B.R. at 274 (citing *In re Transcare Corp.*, No. 16-10407 (SMB), 2020 WL 8021060, at *19 (Bankr. S.D.N.Y. July 6, 2020)). The DIP Motion was properly noticed to all parties in interest and fully disclosed the terms of the proposed financing. (Dkt. No. 65). There is no evidence of concealment, coercion, or self-dealing. (*Id.*). The Creditors do not contend that the Debtor failed to explore alternative funding or that comparable financing was available on more favorable terms.

The terms and substance of the transaction are likewise fair. In evaluating substantive fairness, courts consider "whether the transaction was one 'that a reasonable seller, under all of the circumstances, would regard as within a range of fair value; one that such a seller could reasonably accept." *SPAC Recovery*, 676 B.R. at 276 (quoting *Transcare*, 2020 WL 8021060, at *19). The DIP Loan is capped at $100,000, a modest amount relative to the Debtor's total liabilities of more than $2.6 million. (Dkt. No. 65). The Debtor has demonstrated that, without this financing, "it will be unable to meet ongoing operating obligations, including payroll, rent, utilities, and payments to critical vendors necessary to preserve the going-concern value of the business." (*See* Declaration of Andre Fenton, Dkt. No. 65, Exhibit A, ¶ 9). The financing affords administrative expense priority under § 503(b)(1) and is secured by post-petition assets acquired by the Debtor under § 364(c)(2). (*Id.*; *see also* DIP Financing Term Sheet, Dkt. No. 65, Exhibit B). The lenders are not receiving priming liens, roll-ups of prepetition debt, superpriority claims beyond those permitted by statute, control rights, or other extraordinary protections. Nothing in the record suggests that the insiders are receiving preferential treatment beyond what the Bankruptcy Code expressly allows for post-petition lenders.

The Creditors cite no legal authority and raise no substantive challenge to the fairness of the DIP Loan. They do not argue that the financing is unnecessary to preserve operations, that the amount is excessive, that the priority sought is improper, or that the transaction was procedurally flawed. Their objection rests solely on the fact that the DIP lenders are insiders. (Dkt. No. 68). While insider status can trigger heightened scrutiny, that does not compel rejection. *See, e.g.*, *SPAC Recovery*, 676 B.R. at 277 (approving post-petition secured financing under § 364(c) after subjecting it to entire fairness scrutiny); *Latam Airlines*, 620 B.R. at 731 (finding that the debtors "have met their burden of proving that the DIP Financing satisfies the 'entire fairness' test").

To the extent the Creditors argue that the DIP Motion constitutes an attempt to obtain duplicative relief in light of parallel litigation in the District Court, that argument lacks merit. The DIP Motion merely seeks authorization to obtain post-petition financing pursuant to §§ 364(b)-(c). It does not request injunctive relief, adjudication of claims pending in the Adversary Proceeding, or any relief that would interfere with the parallel proceeding in the District Court. The existence of separate litigation does not impair the Debtor's statutory right to seek financing necessary to preserve estate value during this Chapter 11 case.

Accordingly, even under heightened scrutiny, the Court finds that the proposed DIP Loan is fair, necessary, and in the best interests of the estate. The Objection fails on the merits.

IV.    **CONCLUSION**

For the foregoing reasons, the Court concludes that the Creditors' Objection is untimely and provides no basis to excuse the late filing. The Court further finds that the Debtor has satisfied its burden of demonstrating that the proposed DIP Loan is fair, necessary, and appropriate under 11 U.S.C. §§ 364(b)-(c).

Accordingly, it is hereby **ORDERED** that:

9

1.  The Debtor's DIP Motion (Dkt. No. 65) is **GRANTED**.

2.  The Creditors' Objection (Dkt. No. 68) is **OVERRULED**.

The Court will enter a separate order approving the specific terms of the DIP Loan

consistent with this Memorandum Opinion and Order.

   **IT IS SO ORDERED**.


Dated: April 9, 2026
       New York, New York

                                    /s/ John P. Mastando III
                                    HONORABLE JOHN P. MASTANDO III
                                    UNITED STATES BANKRUPTCY JUDGE